UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,                    )<br>                                                              )<br>            Plaintiff,                                 )<br>                                                              )<br>     v.                                                    )     Criminal No. 05-342 (RCL)<br>                                                              )<br>ARCHBOLD-MANNER, et al.,                 )<br>Jesus Antonio Murillo-Lenis (2)              )<br>Ranfer Rios-Mercado (3),                        )<br>Carlos Delgado-Gomez (10)                    )<br>Enrique Oyola-Ropero (12),                     )<br>German Villegas-Mejia (17),                    )<br>Gerardo Tobon-Rojas (18) and                 )<br>Fernando Zapata-Bermudez (19)              )<br>                                                              )<br>            Defendants.                              )<br>_____) | |

**DEFENDANTS' REPLY BRIEF ON THE ISSUE OF BAD FAITH
IN SUPPORT OF MOTION TO DISMISS FOR LACK OF DUE PROCESS**

Despite the Government's lengthy Response, the simple, basic and obvious question remains unanswered: *Why did this discovery take so long to produce?*

The Government claims that the latest discovery was compiled by "Colombian Authorities," in response to its formal Vienna Convention Requests. But this term, "Colombian Authorities," is never defined. It appears that, by "Colombian Authorities," the Government does not mean diplomats responding to formal requests, as it previously led readers to believe, but simply line Colombian prosecutors and law enforcement agents who have long worked hand-in-hand with DEA agents in Colombia – by processing, for example, all of the provisional arrest warrants issued by DOJ's Narcotics and Dangerous Drug Section in Washington, D.C. When

1

the cooperation consists of seizing and jailing defendants, it is obviously given. But with discovery, for some reason, it is not. It is fair to ask: Why? We still do not know.

We submit that dismissal would make clear that the U.S. Government, and specifically its DEA Regional Offices in Colombia, working with the Colombian government and its prosecutors and law enforcement authorities, must timely comply with the due process expectations of American justice. These cases cannot be fairly prosecuted without such compliance, and if they want Colombian residents who committed acts outside of the United States to be prosecuted in American courts, they must understand the collective responsibility of U.S. and Colombian officials, acting jointly, to make that happen.

The Government's continued suggestion that there was not a "joint venture" between Colombian officials and U.S. law enforcement is difficult to accept, particularly since the discovery failures on the part of the Government make it far more difficult for the defendants to provide further example of joint venture activities at this time. But even given what is already known, the cases cited by the Government are simply inapposite.[1] This is not a situation in which DEA agents were simply "present at the scene of a search and seizure," or merely "had knowledge of the raid," as was the case in the legal citations listed by the Government. It is obvious that the DEA's role here was far more active. For example, the Government cites the case of _United States v. Abu Ali_, 395 F. Supp. 2d 338 , 381-82 (E.D. Va. 2005), where it says the Court found no joint venture "because of a lack of 'substantial' United States involvement in the interrogation of the defendant." [274], at 4. But that is decidedly not what we have here. In the only interrogation of a defendant in this case produced in English to date – Mr. Delgado-Gomez – there undeniably *was* substantial U.S. involvement. As noted in their own DEA-6 (Exhibit A),

---

[1] While the Government has never conceded the "joint venture" issue, defense counsel believes the Government did acknowledge, at a previous Status Conference, that for any U.S. persons who had standing to file a motion to suppress, a sufficient showing had been made for an evidentiary hearing to be held on the "joint venture" issue.

2

fully *three* DEA Special Agents were given access to Mr. Delgado-Gomez for an interview they conducted themselves – which also took place on the same day he was arrested – in an arrest that the DEA-6 itself describes as "the Colombian Military Police {CMP} *acting in concert with* the Cartagena RO [DEA's Cartagena Regional Office]." (emphasis added).

The DEA-6 (at pp.4-5) also notes that the interrogation was a part of "Operation Mountain Mist," which another document produced in discovery (Exhibit B) reveals as a joint venture between the U.S. and Colombian governments – in fact, a special seal was even created to symbolize both countries' joint involvement, with both countries' national flags fancily interwoven into the seal. The U.S. Government has admitted that the U.S. funded this case's Colombian wiretaps. [214], at 45. But that is just a small piece of the pie; since Plan Colombia was established in the 1990s, the United States has spent some $5.4 *billion* on cocaine interdiction in Colombia. *See* http://www.npr.org/templates/story/story.php?storyId=9298685. Plan Colombia appears to be far more far-reaching than any other bilateral effort by U.S. law enforcement. It is almost inconceivable that any serious and concerted U.S. request for discovery would be refused by Colombian authorities – as we have just seen.

The Government claims that it was recently able to obtain the latest discovery quickly, in part, by requesting that the Government of Colombia comply "on an expedited basis." But this begs the question of why no request for an expedited response was made before, despite Rule 16, and even as this Court expressed growing frustration in previous Status Conferences. And certainly, when the Government advised this Court and defense counsel that the U.S. Government must await a Vienna Convention response, there was no suggestion raised at the time that an "expedited" request was possible that could speed up that process. Instead, an impression was left – we submit misleadingly – that the U.S. Government was wholly powerless

3

to obtain the discovery, and had to await the Colombian powers-that-be. We now know this was not so. Moreover, the Government's latest Response states that, despite its "formal" requests for evidence, it was able to obtain the latest discovery "both formally and informally." [274], at 9. Certainly there was no previous suggestion, or even impression, given to this Court or defense counsel that the U.S. Government could obtain discovery from Colombia "informally."[2]

What the Government previously said it was unable to do in the two years this case has been pending, it has somehow now been able to accomplish in just over two weeks. Whereas many of the defendants previously had only a few documents pertaining to their clients, we now have more than 10,000 pages of un-translated Spanish documents that have been dumped on us just a few weeks before trial. The Government asks how this prejudices the defense, and tries to suggest that the defense has never identified any prejudice. But as previously noted [272], the recently produced photographs, video surveillance, investigative reports, judicial wiretap authorizations, additional telephone conversations, charts, maps, and other documentation, including any *Brady* and *Giglio* materials contained in this dump, have not been provided sufficiently in advance of trial to allow for its effective use, as the law requires.[3] As previously noted, the documents are in Spanish, and have not been translated by the Government. As a

---

[2] As the defense has noted, previous courts' willingness to accept such Government's representations at face value may explain why they accepted less discovery in international cases – because of an incorrect belief that they had no choice. In the instant case, defendants raised with this Court several problems such discovery lapses had created for due process in those other cases– and this Court agreed, granting several of defendants' motions. Nor is the baseline of discovery for international cases uniform in this District, as the Government tries to suggest. In *United States v. Karake*, Criminal Action No. 1:02-CR-256 (D.D.C.), for example, Judge Huvelle made clear that more stringent discovery requirements were going to be expected; following a full suppression hearing, that case was dismissed.

[3] The Government tries to suggest that all of the information in the dump would be harmful to the defense. But the reality is that nobody knows that to be true – as the defendants have noted, the dump is surely likely to obtain some information – exculpatory or at least impeachment materials – that are helpful to at least some of these defendants. The Government also criticizes the defense for not identifying specific exculpatory materials therein. But that is precisely the problem – how can we prove a violation at this stage when it would take months to transcribe these documents produced just weeks before trial? The problem the Government has created is frankly one that will be felt most directly by this Court – since *Brady* and *Giglio* materials are likely to be found later, and will force this Court into the difficult posture of likely having to consider viable motions challenging convictions after this Court wastes 3-6 weeks in a jury trial.

4

result, as of the filing of this Reply, only a small portion of the discovery has even been translated for the defendants. Defense counsel cannot review the recently produced materials with their clients, or make any decisions about any further investigation necessitated by this discovery, until they are translated.

The long-requested independent tests of the controlled substances, which we are now told would need to take place in Colombia, would also require travel vouchers and arrangements for an expert sent abroad, all at a time when defense counsel should be focusing on trial preparation. In short, normal trial preparation is impossible in this environment. Despite this Court's August 15 Order, we have wiretap translations that are not federally certified and are often badly deficient. In addition, the Government continued to provide additional translations up to the September 12 Status Conference, which was well after the Court's deadline.[4] We still have no evidence binders or any clear designations of the physical evidence the Government plans to introduce at trial. Not even the Dan Viking drug sample – seized by the *U.S. Coast Guard* – has yet made its appearance in this district. We have *conflicting schematics* of what the alleged conspiracy even looks like. And we are less than two weeks before a long-scheduled trial date.

The Government claims it has complied in good faith on discovery. *But cf. Food Lion, Inc. v. United Food and Commercial Workers International Union, AFL-CIO-CLC*, 103 F.3d 1007 (D.C. Cir. 1996) ("In order to prove good faith substantial compliance, a party must demonstrate that it took all reasonable steps within its power to comply with the court's order"). Yet, as previously discussed, *none* of the five Specific Directives contained in this Court's

---

[4] And more discovery continues to roll in. Just this morning, less than two weeks before trial, defense counsel received via FedEx a DVD with additional discovery materials. In addition to translations of certain lab reports, the DVD contains over a hundred photographs, plus additional un-translated police reports and documents. The Government says it is possible some of this information may have been provided in their production of September 12 – a date which itself was after the September 8 deadline for physical evidence established in the August 15 Order.

August 15 Order were complied with. *Cf. United States v. Ball*, Criminal Action No. 05-100 (D.D.C.), Docket No. 501 (reaffirming courts' right to set and enforce pretrial deadlines).

We return to the basic question: Why did it take so long for Colombian and U.S. authorities to produce this discovery? Only the Government knows the answer, but this Court may take the Government's failure to answer that question satisfactorily in evaluating this motion. In the absence of a reasonable explanation, it is fair to conclude that the authorities controlling the production of discovery felt they would gain a tactical advantage over these defendants, who are now in a foreign country dealing with the anxieties and uncertainties associated with their prosecutions in a foreign country. And it is reasonable to conclude that delaying and/or limiting discovery had served their purposes well in prior cases, and would likely serve them well in this case, notwithstanding the defendants' due process rights.[5]

The Government does not dispute that these defendants would pay the price for any continuance, by being held in custody even longer, through no fault of their own. The Government now suggests we move forward with a trial on October 1. So the only question remaining is whether that trial would comport with due process. The defendants submit that the answer is obviously no. Dismissal of the indictment is the only viable remedy here, and it should be ordered forthwith.

                                         /s/
                                   Gregory S. Smith, Bar No. 472802
                                   913 East Capitol Street, S.E.
                                   Washington, D.C. 20003
                                   (202) 460-3381
                                   On behalf of Carlos Delgado-Gomez (#10)

---

[5] The defendants have at least made a prima facie showing of bad faith. Before rejecting dismissal, this Court should, at a minimum, order an evidentiary hearing on the issue of bad faith, so that the joint venture issue can be explored further, with the Government ordered to bring its agents or others to respond to defendants' threshold showing by explaining why the evidence just produced could not have reasonably been produced earlier.

6

            /s/
Anthony Martin, Bar No. 362537
On behalf of Jesus Antonio Murillo-Lenis (#2)

            /s/
Diane S. Lepley, Bar No. 368927
On Behalf of Ranfer Rios-Mercado (#3)

            /s/
Ron Earnest, Bar No. 477305
On behalf of Enrique Oyola Ropero (#12)

            /s/
Cynthia Katkish, Bar No. 418876
On behalf of German Villegas-Mejia (#17)

            /s/
Mitchell Seltzer, Bar No. 261933
On behalf of Fernando Zapata-Bermudez(#18)

            /s/
Howard B. Katzoff, Bar No. 348292
Counsel for Gerardo Tobon-Rojas (#19)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANTS' REPLY BRIEF ON THE ISSUE OF BAD FAITH IN SUPPORT OF MOTION TO DISMISS FOR LACK OF DUE PROCESS is being served upon counsel for the United States and all co-defendants' counsel through the Electronic Case Filing system.

This 18th day of September, 2008.

            /s/
Gregory S. Smith